**SPIDEL, Estate of, In re.**

Ohio Appeals, Second District, Darke County.

No. 690.   Decided January 9, 1952.

72

T. A. Billingsley, Greenville, Orel J. Myers, Dayton, for applicants-appellants.
Wilbur D. Spidel, Richard E. Hole, Greenville, Webb Clark, Dayton, for contestants.
Jesse K. Brumbaugh, Greenville, for churches.

## OPINION

By THE COURT:

This is an appeal on questions of law from an order of the Probate Court fixing the amount of extraordinary compensation to the executor and fees for legal services of appellants, Billingsley and Myers, upon the application of said executor. The amount of the fee fixed for the executor was $3000.00 and for both attorneys $15,000.00.

Eight errors are assigned. They may be epitomized as error in the reception of evidence on behalf of those who opposed the application; rejection of evidence offered by appellants; that the Court, in making the order, did not give proper consideration to certain elements which should have been evaluated in fixing the amount of the extraordinary compensation and fees, that the finding of the Court is contrary to law and against the manifest weight of the evidence and other errors on the record. We set them out in detail as we discuss them.

The appellants are T. A. Billingsley and Orel J. Myers whom we hereinafter refer to as appellants or applicants. The objectors here, and in the trial court, were the heirs at law of the testator, other than Sarah Spidel Warrick, contestants in the Will contest suit and the defendants in the will case, legatees under the will, The Presbyterian Church of Greenville and the Brethren Church of Greenville, to which we refer as the objectors.

The first error assigned is that the Court rejected evidence offered by the executor and his counsel as to the wishes, orders and directions of the decedent given to them prior to

his death as to the manner and method of administering his estate, particularly as to the employment of counsel.

The second error assigned is rejection of other evidence offered on behalf of the applicants.

Specifically, these assignments are directed to the refusal of the Court to receive the proffered testimony of the executor, Mr. Billingsley, Mr. Myers and Bessie Coombs. The questions propounded to Miss Coombs and her proffered answers were these:

Q. Whether or not at any time he (John W. Spidel) ever discussed with you the fact that he had asked any persons to represent the defense of his will in case it should be contested:

A. Yes.

Q. What did he say to you at that time, Miss Coombs?

The proffered answer: That he told her that he had asked Orel J. Myers of Dayton, Ohio, and T. A. Billingsley of Greenville, Ohio, to defend the will in case a suit to contest it was filed.

Q. Whether or not John Spidel talked to you about this matter frequently?

A. Yes.

The executor had been inquired of in chief whether or not prior to the death of John Spidel he had given instructions as to what he wanted the executor to do after his death. An objection was sustained to this question and it was not permitted to be answered and the proffer was to the effect that he had been directed by John W. Spidel, in his lifetime, to employ the two appellant attorneys. In the direct examination of Mr. Myers, in an answer which was not responsive to the question, he started to say that John Spidel had asked him to defend his will. Upon objection the Court said, "I will not permit that part to be stated." Objection was noted but there was then no proffer to the answer. However, in the cross-examination of Mr. Myers he was interrogated at length and fully about the request by decedent, in his lifetime, that in the event of a contest of his will he desired Myers and Billingsley to defend his will. Mr. Billingsley testified substantially as had Mr. Myers. It thus appears that the trial judge had before him the subject matter of the testimony which it is claimed the Court erred in refusing to accept, with this qualification that it came from interested witnesses. Miss Coombs was disinterested.

It was the contention of opponents that at all times in the will contest applicants represented the life tenants, Dale R. Warrick and his wife, Sarah Spidel Warrick, and that employment of appellants by the executor was unnecessary and

unauthorized because the residuary legatees, the churches, were represented by counsel.

We have been favored with the opinion of the trial judge which discloses appreciation and careful consideration of the questions involved in his order. We, of course, do not and cannot consider this opinion as findings of fact and law or as the order appealed from, but, it is of value insofar as it sets forth the reasons supporting the conclusion reached. He states that:

"The residuary legatees having employed counsel, object to the allowance of extraordinary compensation."

Supporting the view of the objectors, the Court held that the executor was under no duty to employ counsel. He cites and discusses **Andrews v. Andrews, 7 Oh St 143; Foltz v. Boone, 107 Oh St 562;** Re: Ullman, 12 O. C. C. (N. S.) 340; Re: Curry, 20 O. N. P. (N. S.) 48; Wier v. Wier, 7 C. C. (N. S.) 289; Re: Estate Johnson, 4 O. N. P. 156. Notwithstanding the opinion that the Executor was not justified in employing counsel the Court awarded $15,000.00 to counsel which negatives the concept that the executor acted without authority in employing counsel to defend the will. Manifestly, if we are in agreement with the proposition that the executor acted without authority in the employment of counsel to defend the will on his behalf, our work is at an end because the fee fixed could not be questioned by appellants as being inadequate, nor, by objectors as excessive inasmuch as no appeal is prosecuted by them. However, if the trial judge erred in acting upon the conviction that the executor had not the right to defend and to employ counsel to defend the will, his judgment may have been affected to the prejudice of appellants.

We are not disposed to say that an executor is in every situation justified in employing counsel to defend the will wherein he is named as fiduciary. Different factual situations confronting an executor require different determination whether or not he shall employ counsel. **18 O. Jur. 440.**

Whether or not the foregoing statement is correct in view of **§12082 GC** which has been enacted since the cases cited by the trial judge were announced, we hereinafter discuss.

It is estimated that the churches, as legatees under the Spidel will, will take in value about four-fifths, and the Warricks, life tenants, one-fifth of the net estate. The heirs, other than Mrs. Warrick, were given one dollar each.

The background of the will of John W. Spidel is convincing that it was drawn not only with the purpose of passing the bulk of his estate to the churches but also to prevent certain

relatives, who normally would be the objects of his benefaction, from taking anything of substance from his estate. The testator went to extraordinary and unusual lengths to make certain that his will would accomplish the distribution of his estate as he had therein provided. To support the validity of his will and his capacity to make it, he had circulated and widely signed a petition reciting the fact of his ability to execute a will. He talked about it to many of his friends. The Warricks, the life tenants, and the executor realized the full import of this background on the Spidel will. The only means that the testator had provided to assure that his will would be carried out as written was through his representative, the executor. Whether or not his will was wise and just or equitable was not a determinative factor as to its validity. If he had the capacity to make it, he could dispose of his property as he saw fit.

Upon the admissibility of the testimony under consideration counsel for neither side offers any authority whatever. Applicants insist it was admissible. Objectors say that it was not. The trial judge thought it was in the nature of a testamentary pronouncement which to be effective must have been carried into the will. Counsel for objectors say that if counsel appellants rely upon a contract with the testator they should have filed this contract as a claim with the executor during the period prescribed by statute.

As we understand the claim of appellants, it is not that they had an enforceable contract with the testator but that they had a contract of employment with the executor which was in conformity to and in observance of a specific request of the testator. The testator could have provided in his will for the appointment of counsel in the event it was contested but the fact that he did not, in our judgment, does not preclude proof of his desires in the matter by testimony aliunde the will. Had the testator entered into an oral contract, the party with whom he contracted could have maintained after testator's death, an action upon the contract against his estate if he could make proof of his contract by testimony other than his own. Tanner v. Huntington National Bank, Exr., 70 N. E. (2d) 159. By analogy, the same result should follow in the situation presented here.

This testimony was admissible and probative of the right and duty of the executor to employ appellants as counsel in his defense of the will and if the trial judge should find that the executor and counsel were directed by the testator as testified, it affords strong support for the claim that the executor was under the duty to act.

Much has been said to the effect that it was not necessary that the executor employ counsel to defend the will, inasmuch as the churches had capable counsel whose employment was known to and sanctioned by the executor and who, at all steps in the litigation defended the will, and if the will were upheld would be required to bear the burden of the payment of attorneys fees on behalf of the estate.

There are several facts which tend to support the claim that the executor defended the will in that capacity and that he did employ and should have employed counsel. It is inferable from the record that the churches, at all times, were in an attitude of compromise with the Spidel heirs who had been disinherited by the will. The possibilty of such compromise was lessened when the will was set aside. It was heightened when that judgment was reversed. Warrick, as executor and his wife, the life tenant, consistently and at all times insisted upon the administration of the will in every essential as drawn. Mrs. Warrick maintained this position to her own substantial financial disadvantage. There can be no doubt, under all the facts appearing, that they acted in accord with the desires and purposes of the testator. It is undisputed that the executor paid for the bill of exceptions on the appeal in the will contest and that although this was known to the churches no offer was made to share this expense. Without this bill no error upon which the reversal was based could have been presented in the Court of Appeals. The churches must have known at this juncture that Mr. Warrick was acting, as executor, in the defense of the will and not individually.

We are not critical of the churches for the compromise which they made with the contestant heirs. Technically, they had the right to give away any part of the money which they would receive under the will. No doubt the compromise was actuated with good purpose and in the right spirit but that does not change the fact that it defeated, in part, the dominant purpose of the testator as expressed in his will.

The executor sustained a very close personal and business relation with the testator in his lifetime and had a more intimate knowledge than any other person of the facts which would be helpful to the defense of the will. That the executor knew of and consented to the employment of counsel by the churches was not a bar to his right to defend and to employ counsel. It is not claimed that the churches opposed such action or that the executor indicated that he would not defend. Obviously, he approved the decision of the churches to provide counsel to defend the will. He could not have

prevented it had he opposed. It is said that, inasmuch as he was a legatee, there was a presumption that he acted in his own behalf. This is true but such presumption may be over come by a fair consideration of all the evidence. Under the order of the Court as to. the payment of the fees out of the estate he would be required to bear his proportionate share as a legatee.

Comment was made throughout the hearing that the will contest litigation was not concluded until the compromise was effected and that all that the decision of the Court of Appeals accomplished was to require a new trial. Had the decision of the Court of Appeals then been journalized, the status of the will was that it was the valid last will and testament of John W. Spidel because of the presumption of its validity resulting from its probate. The entry which eventually was spread upon the record sustained the will.

It is contended that counsel in the defense of the will were employed by the Warricks. This is supported only by the signatures in their behalf by counsel in certain entries but the direct testimony of counsel and Mr. Warrick is to the effect that he had no contract with and expected no compensation from the Warricks individually.

The third assignment of error is error in the reception of evidence offered on behalf of those opposing said applications. We find no discussion of this assignment in the briefs.

The fourth assignment of error is:

For error in fixing the amount of compensation to be paid to Orel J. Myers and T. A. Billingsley, as attorneys, for services over and above the services ordinarily rendered by an attorney in the settlement of an estate, and for services in defending the will in the contest thereof in the case of Spidel, et al. v. Warrick, etc., No. 31815, Common Pleas Court of Darke County, Ohio, and for services rendered by Dale R. Warrick, as Executor, over and above the services ordinarily rendered by an executor in the administration of an estate, and for extraordinary services rendered in the defense of the will contest in the above entitled case, the allowance fixed by the Probate Court being too small as appears from the record in the Bill of Exceptions, and said finding of the Probate Court being contrary to and against the manifest weight of the evidence as shown by said record.

and the fifth assignment of error is:

That the finding and judgment of the Probate Court failed to take into consideration the size of the estate, the character of the estate, the importance, intricacies and complica-

tions of the questions involved, the amount of recovery for and to the benefit of said estate, the time involved and the value of the services rendered, the results accomplished through the services so rendered, the finding of said Probate Court being wholly insufficient when the compensation fixed by the said Court is considered on the basis of the evidence received in the hearing on the application herein.

Both of these assignments are predicated upon the weight of the evidence. The attorneys who were offered by the parties as expert witnesses on the question of the amount of compensation that should be allowed to the applicants' attorneys, were eminent counsel especially well qualified with years of active experience in the practice of law. Some who testified for the applicants were permitted to express opinions based upon the evidence of Mr. Billingsley as they heard it from the stand as to the nature and extent of the services performed by counsel for the executor and for which they asked to be compensated. This testimony was received over the objection and exceptions of counsel for objectors. Although the validity of these objections is not before us as there is no cross appeal, inasmuch as this case may be tried again, we advise counsel that an expert should not be permitted to give an opinion based upon his interpretation of the testimony of a witness whom he has heard.

The attorneys who testified for the objectors all answered, in chief, hypothetical questions propounded to them and they were, of course, interrogated at length on cross-examination.

It is the contention of appellants that they were employed by the executor at the request of decedent testator and that the services were upon a contingent basis; that is to say any fees to be paid to them were dependent upon the successful outcome of the litigation. The claim of the objectors was, and is, that the employment of counsel was not upon a contingent basis and could and should be fixed, if at all, upon the fair value of their services based upon per diem compensation and the hypothetical questions were propounded and answered upon that theory. They also say that there was no contingent fee because under §12082 GC counsel were assured payment for their services though they were unsuccessful in defending the will and that successful or not, they would be paid upon order of Court.

Sec. 12082 GC was effective July 4, 1945, several months after the application for probate of the will but shortly before it was admitted to probate. It authorizes an allowance of a fair, just and reasonable compensation to a fiduciary and his counsel to be fixed by the Common Pleas Court for services rendered in an unsuccessful defense of a will.

Counsel for appellants urge that this legislation is of doubtful validity. Its constitutionality was not properly challenged. If we would hold that it is clearly unconstitutional it would lend support to the claim of appellants that their employment was on the basis of a contingent fee. Had the executor failed in his defense of the will and had application been made to the Common Pleas Court to fix attorneys fees under the statute its validity may have been questioned by contestants. This, of course, is conjectural. We, therefore, assume that the statute is valid and effective and to the extent that it would have been given application had the executor failed in his defense of the will, it removes any basis for the contention that the employment of counsel for the executor was contingent in the sense that they must have maintained the validity of the will to receive any compensation. The testimony of the appellants does not support the claim that there was a contingency respecting the payment to them of any fees under their employment by the executor if the Court found that such employment was justified.

In our holding that there was no contract for a contingent fee as affected the right of appellants to receive any compensation, we do not say that there were no contingencies affecting the amount of the fee, or that the basis upon which the court should fix the fee upon a successful termination of the contest of the will litigation should be the same as upon an unsuccessful defense of the will. There were two contingencies involved upon the contract upon which appellants rely.

(1) The approval of the court of the defense of the will by the executor and of his employment of counsel.

(2) That they succeed in sustaining the will.

If they failed as to the first, they would receive no compensation from the executor upon the order of the Probate Court and, could have no benefit there of §12082 GC. If they did not succeed in the defense of the will they would not be denied all compensation but would probably receive less under §12082 GC.

Assuming as we do, that §12082 GC is valid it presents the query whether in all instances where there is a contest of a will and the executor actively defends with counsel he shall be paid without respect to a determination that the executor was justified in such employment. There is no qualification in this section upon which payment shall be made to counsel for the executor except that counsel have been unsuccessful in sustaining the will. If there remains an obligation upon the fiduciary to establish the necessity of his defense of the will by counsel determination of this question would be made by

the Common Pleas Court and would thus take away from the Probate Court any authority in that respect.

Upon a careful examination of the hypothetical questions in their entirety propounded to the witnesses for the objectors and particularly the answers thereto, we are convinced that they embody only those elements which would constitute a proper basis of a fee to counsel if they had been unsuccessful in defending the will, the estate being of sufficient value to justify full payment of fees, and did not give consideration to a material added element which was proper in fixing a fee based upon the successful defense of the will. We shall not labor the proposition that, in all probability, any Court would award a larger fee to counsel who had succeeded in upholding a will where the estate involved was of the value of $260,000.00 than it would upon an unsuccessful defense of the will. It seems self-evident and is abundantly supported by authorities and by paragraph 12, (4) of the Canons of Professional Ethics of The American Bar Association.

There are substantial differences in the hypothetical questions respecting the amount of legal fees propounded by applicants and objectors and on the basis upon which the answers of the witnesses were given. All of the witnesses for the applicants give definite value to the element of the success in the result accomplished by counsel for the executor in the will contest litigation. The witnesses for the objectors base their answers on direct-examination entirely upon the fair value of the services upon a reasonable per diem charge. In our judgment, the answers of the witnesses' for the objectors are, in every instance, as stated in chief, probative of a sum that should be allowed to counsel under §12082 GC but fail to give weight to at least one material element making up the value of the services of appellant counsel in this case, viz: the successful outcome of their efforts.

There are other particulars wherein the hypothetical questions are either objectionable or lacking as put to objectors experts. Their questions contain no mention of the services rendered by counsel in the probate of the will and in securing the reduction of the Federal Estate Tax which had been assessed against the estate after the setting aside of the will. These services in our opinion were extraordinary in character and brought about a reduction in the Federal tax of approximately $27,000.00 to the benefit of the estate as the result of the protest entered and prosecuted by the executor and his counsel. The application of the executor for an allowance of counsel fees was intended to include all extraordinary services in behalf of the estate and broad enough to include

these services. This saving in tax alone to the estate was almost equal to the total amount earned by all counsel as fixed by the trial judge.

In the addendum to the hypothetical question of objectors this appears:

"Now, assuming that all of the facts just stated to you are true, and assuming further that the attorneys who are applying for fees (1) had no contract with said Dale R. Warrick as executor and (2) that they also represented Dale R. Warrick and Sarah Spidel Warrick, and (3) that each the said Dale R. Warrick and Sarah Spidel Warrick were well able to pay for any services rendered on their behalf as individuals, now, in your opinion, would the basis for the estimate of the value of the services rendered to Dale R. Warrick, as executor, be such a situation as would justify the allowance of a fee upon a contingent basis rather than one measured by the actual value of the services rendered to the estate?" (Numbers in quotation ours.)

Bracket (1) assumes that appellant counsel had no contract with the executor to defend the will. If that is true, then they have no standing whatever in their claim for fees. Their claim is predicated upon an express contract with the executor and they and the executor testify as to such contract. There is nothing to the contrary. All terms of the contract were agreed upon. It could of course be consumated only by Court action. The natural inference to be drawn by witnesses from the assumptions in (2) and (3) are that coupled with the fact that there was no contract between the executor and his counsel they were representing Dale R. Warrick and Sarah Spidel Warrick individually; that they were well able to pay for such services and they only would pay was to be implied.

Upon the assumptions in the question there not only was no basis for a contingent contract, there was no contract whatever. There is no objection to the hypotheses that appellants represented Mr. and Mrs. Warrick and that they were able to pay for their services although all the direct testimony in the case was to the effect that they had not agreed to pay for any part of the services of counsel, no charge was made against them and none was intended to be made. But the objectionable part of the question is on combining in the question both the unwarranted assumption that there was no contract between counsel and executor with the hypothesis that they were representing solely the Warricks as individuals. The question as originally framed included this subject matter:

"and considering further that no application was filed in the Probate Court of Darke County, Ohio, by the said Dale R. Warrick, as executor, for authority to employ counsel as

executor for the defense of said will, and (1) considering further that no contract was entered into by the said Dale R. Warrick and the said T. A. Billingsley and Orel J. Myers setting forth (2) any means, basis or standard of compensation for any services they might render to said executor, can you, from a consideration of the facts related to you in the foregoing question, give an opinion as to the value of the services which would be chargeable to the general estate, (3) having in mind their representation of Dale R. Warrick, as executor, and also having in mind that the principal residuary legatees were represented by counsel in the case." (Numbering ours.)

The assumption in (1), as we have heretofore stated, is not supported by the record and (2) there was a means of compensation agreed, viz: the judgment of the Court.

We have discussed these hypothetical questions with the realization that the Court had wide discretion in fixing the fees and that the answers to the questions were not necessarily controlling upon the judgment. We could not, therefore, hold that standing alone, the answers require a reversal on the weight of the evidence.

Assignment of error No. 6 is:

Error in the record inasmuch as the Probate Court found that the reasonable value of the extraordinary services rendered was $30,000.00, and in ordering one-half of that amount paid by the estate when in fact under the law the entire amount should be assessed against the residuary estate as administration expenses, and that under the law of this State the entire allowance for attorney fees and extraordinary compensation should be charged against the residuary estate.

It is urged that the Court erred in requiring the payment of the fees allowed to be made from the general estate of testator and we are cited to **In Re: Dickey Estate, 57 Abs 346.** The order of the Court conforms to the principle of the Dickey case. Here the estate from which the fees are to be paid is the residuum from which come the life estates and the fee of the Churches.

Upon the claim that the allowance made to the executor for his extraordinary services in that capacity was inadequate, we note that in the written opinion the trial judge fixed his compensation at $3500.00. The judgment entry sets out the sum of $3000.00. There is no explanation of this difference and it may be but an inadvertence in the preparation of the entry. We have no means of knowing just what items were considered by the trial judge in fixing this compensation. Because of the wide discretionary power of the trial judge in fixing this compensation, we cannot say that he abused it in awarding $3500.00

as a minimum, and the amount to be fixed can be reconsidered at the rehearing of the application of appellants.

Because of the acceptance of the hypothetical questions with the infirmities to which we have drawn attention, the uncertainty as to what effect the answers had upon the judgment, together with the conclusion of the Court in his opinion that the defense of the will by the executor and his counsel was not justified or authorized, and the refusal to admit the testimony of Miss Coombs which was material and which refusal was prejudicial under all the circumstances appearing in the record, and the uncertainty as to the correct amount of extra compensation to be awarded the executor, we hold that the judgment must be reversed and the cause remanded for further proceedings according to law.

HORNBECK, PJ, WISEMAN & MILLER, JJ, concur.